**UNITED STATES, Appellee**

v.

**Specialist Four Arthur C. YSLAVA, SSN 562–11–8969, United States Army, Appellant.**

**No. CM 444515.**

U.S. Army Court of Military Review.

July 11, 1984.

----

Captain Marcus C. McCarty, JAGC, argued the cause for the appellant. With him on the brief were Colonel William G. Eckhardt, JAGC, Lieutenant Colonel William P. Heaston, JAGC, Major Lawrence F. Klar, JAGC, and Captain Ann M. Kanamine, JAGC.

Lieutenant Colonel Thomas M. Curtis, JAGC, argued the cause for the appellee. With him on the brief were Colonel James Kucera, JAGC, Lieutenant Colonel John T. Edwards, JAGC, and Captain Samuel J.

Rob, JAGC, and Captain Thomas J. Benjamin, JAGC.

Before The Court Sitting En Banc.

## OPINION OF THE COURT

SU–BROWN, Senior Judge:

In accordance with his pleas, appellant was convicted by a military judge sitting as a general court-martial of possession and distribution of 100 grams of marijuana on 3 February 1983, possession and distribution of marijuana on 22 February 1983, and communication of a threat. He was sentenced to a dishonorable discharge, confinement at hard labor for 14 months, forfeiture of all pay and allowances and reduction to Private E–1. Pursuant to a pretrial agreement, the convening authority suspended all confinement in excess of one year and one day for a period of one year and one day.

Appellant now contends that he was denied a fair trial and a proper post-trial review and action due to Major General Anderson's (the Convening Authority) attempt to exercise unlawful command influence over the court-martial process within the 3d Armored Division.[1] Appellant has set forth his contention in three assignments of error. First, appellant was denied a "fair forum" and a fair sentencing proceeding by the presence or perception of unlawful command influence within the Division. Second, the Convening Authority's injudicious conduct over an extended period of time disqualified him from referring the case to trial as the convening authority. Third, the Convening Authority's attempt to discourage favorable character testimony in extenuation and mitigation disqualified him from taking action in the case. Although there was evidence of unlawful command influence within the 3d Armored Division, see United States v. Treakle, 18 M.J. 646 (A.C.M.R.1984) (en banc), we are satisfied, under the facts of this case, that appellant did not suffer prejudice as to findings or the adjudged sentence.[2] While we regard the tenor of the convening authority's repeated public statements pertaining to military justice with disfavor, we do not find that he was disqualified from referring the case to trial, or in conducting the review and action.

■ Appellant contends he was denied a "fair forum" because of the pervasiveness of the command influence which affected his decision to plead guilty. This constitutes a challenge to the findings of guilty on the ground that appellant's pleas were improvident. Article 45, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 845 (1982). The test for providence in this case is whether there is a reasonable possibility that the presence of command influence would have affected his pleas. We find that no such reasonable possibility exists and that appellant's pleas of guilty were unaffected by unlawful command influence. Our determination is predicated upon the following factors. First, as we indicated in United States v. Treakle, we are convinced that the scope of unlawful command influence on witnesses only extended to potential character witnesses. We find that appellant was not denied favorable character witnesses, based on counsel's assertions and the fact that numerous witnesses were available outside the courtroom. In any event, the existence of additional witnesses would not

---

1. See United States v. Treakle, 18 M.J. 646 (A.C.M.R.1984) (en banc), for a detailed discussion of the facts relevant to the issue of unlawful command influence within the 3d Armored Division.

2. The transcript of testimony and the documentary exhibits compiled in a lengthy motions hearing in the case of United States v. Giarrantano, SPCM 20588 (1983), were admitted as defense appellate exhibits in this case. Appellant acceded to this action. Citing United States v.

Karlson, 16 M.J. 469 (C.M.A.1983), and United States v. DuBay, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967), appellant has argued that this evidence, and the numerous affidavits which have also been admitted on his motion, can only be used to raise issues or decide the case in his favor. We do not understand Karlson or DuBay to preclude us from considering evidence offered by appellant or from making findings of fact where the evidence is free of substantial dispute.

have affected appellant's plea decision because the nature of the charged offenses militated against the introduction of favorable character testimony during a trial on the merits. This conclusion is corroborated by the fact that appellant's defense counsel declined to call the available character witnesses during the presentencing phase of the court-martial for "tactical reasons." Second, the record of trial demonstrates that the military judge conducted a searching inquiry into appellant's plea of guilty. Appellant, through counsel, expressed an awareness of General Anderson's actions. Appellant's plea was a knowing, intelligent, and conscious act which was properly accepted by the military judge. *See United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969). Third, the maximum imposable punishment, which was greatly in excess of the terms of appellant's favorable pretrial agreement, reflects the voluntary nature of his plea.

Appellant also contends he was denied a fair sentencing proceeding by the presence or perception of command influence within the Division. We are convinced appellant did not suffer prejudice as to sentencing. Appellant was not tried by court members who could have been influenced by General Anderson's remarks, but by military judge alone. As a result, the appearance of command influence did not enter the courtroom. The remaining area of possible prejudice affecting sentencing is in the production and testimony of favorable character witnesses. In this trial, appellant's civilian defense counsel informed the military judge that favorable character witnesses were available and present outside the courtroom, but that for tactical reasons, would not be called. While defense counsel's averment of no prejudice does not constitute waiver of the command control issue, *United States v. Blaylock*, 15 M.J. 190 (C.M.A.1983); *United States v. Hawthorne*, 7 U.S.C.M.A. 293, 299, 22 C.M.R. 83, 89 (1956), his factual statement to the court concerning the availability of witnesses and counsel's opinion that he had "discovered no evidence as a result of this matter that would prejudice the accused"

are entitled to significant weight as to the question of prejudice. This is particularly so in view of defense counsel's statement in the record that he was aware of the division command sergeant major's letter which cautioned noncommissioned officers not to testify for convicted soldiers in a trial by courts-martial, and his knowledge that General Anderson had "given some briefings to various groups of officers on the same subject...."

In view of the seriousness of the charged offenses, the maximum imposable punishment, which included confinement at hard labor for 33 years, and appellant's service record (which included an Article 15 for the possession of marijuana), we are satisfied from the record of trial that appellant did not suffer prejudice as to the sentence adjudged. *See United States v. Johnson*, 14 U.S.C.M.A. 548, 553, 34 C.M.R. 328, 332 (1964), for a discussion of the various factors considered in determining whether a sentence was affected by unlawful command influence. *See also United States v. Grady*, 13 U.S.C.M.A. 242, 246, 32 C.M.R. 242, 246 (1962).

We now turn to appellant's contention that General Anderson was disqualified from referring the case to trial and in taking action.

Reduced to its essentials, appellant's attack upon General Anderson's participation in the referral, review and action of his case is based upon the theory that there is a standard of judiciousness required of a convening authority in the court-martial process. In this case, the issue is whether General Anderson had an interest other than an official interest in the outcome of appellant's trial. Succinctly stated, a convening authority becomes an accuser and therefore is disqualified when based "upon the particular facts and circumstances ... a reasonable person would impute to him a personal feeling or interest in the outcome of the litigation." *United States v. Gordon*, 1 U.S.C.M.A. 255, 2 C.M.R. 161, 166 (1952). *See also United*

*States v. Crossley,* 10 M.J. 376, 378 (C.M.A. 1981).

■ There is no evidence to suggest that General Anderson had other than an official interest in appellant's case. His comments on military justice were stated in general terms and did not espouse personal interest in the outcome of any particular case. Accordingly, he was not an accuser, and on this basis, was not disqualified from participating in the referral process.

■ However, there is a distinction between the referral process and the review and action of a case. When a convening authority refers a case to trial, his role is primarily prosecutorial in nature. *Cooke v. Orser,* 12 M.J. 335 (C.M.A.1982); *United States v. Hardin,* 7 M.J. 399, 404 (C.M.A. 1979). In contrast, the convening authority's function after trial more closely resembles that of a judicial officer. *See* Article 64, UCMJ, 10 U.S.C. § 864; *United States v. Boatner,* 20 U.S.C.M.A. 376, 43 C.M.R. 216 (1971). The Court of Military Appeals has repeatedly emphasized the importance of the post-trial review conducted by a convening authority. It is axiomatic that an accused is:

> entitled as a matter of right to a careful and individualized review of his sentence at the convening authority level. It is the accused's first and perhaps best opportunity to have his punishment ameliorated and to obtain the probationary suspension of his punitive discharge.

*United States v. Howard,* 23 U.S.C.M.A. 187, 192, 48 C.M.R. 939, 944 (1974) (and cases cited therein). *See also* Article 64, UCMJ; paragraph 88, Manual for Courts-Martial, United States, 1969 (Revised edition) [hereinafter MCM].

■ As the convening authority, General Anderson was required by law to review appellant's sentence and matters pertaining to clemency with an open mind. *United States v. Wise,* 6 U.S.C.M.A. 472, 477, 20 C.M.R. 188, 193 (1955). Appellant was entitled as a matter of right to an impartial initial review by an unbiased convening au-

thority. *United States v. Martinez,* 11 U.S.C.M.A. 224, 29 C.M.R. 40 (1960).

■ We are convinced General Anderson was not inelastically determined to approve a punitive discharge; consequently, he did not lack the requisite impartiality to perform the post-trial review function. General Anderson's repeated comments concerning the recommended referral of cases to court-martial and the subsequent rendering of favorable character testimony at trial were subject to a variety of interpretations by members of his command. However, General Anderson clarified his intent immediately after learning of a letter published by the command sergeant major which enjoined non-commissioned officers not to testify for "convicted criminals." In succeeding weeks, General Anderson attempted to stop further distribution of the letter. More than three months prior to appellant's trial date of 9 June 1983, General Anderson informed subordinate commanders and senior noncommissioned officers that there was no policy against testifying favorably for accused persons. On 4 March 1983, General Anderson issued a command letter in which he stated the following:

1. Let's all understand several rules related to testifying on behalf of an accused soldier.

2. At courts-martial or administrative elimination proceedings, an accused soldier has an absolute right to have available witnesses, if any, testify about his or her good conduct, reputation or record for efficiency, or any trait desirable in a good soldier. Stated another way, if a witness has information favorable to the accused soldier and useful to the court-martial or elimination board in determining an appropriate sentence or recommendation, that witness is duty-bound to provide testimony to that effect. Indeed, to go a step further, I believe that the witness ought to take the initiative to let the accused soldier or his defense counsel know what information he has.

This letter is reflective of General Anderson's true intent, and establishes that ap-

pellant received an impartial and individualized review. *See United States v. Howard,* 23 U.S.C.M.A. 187, 48 C.M.R. 939 (1974). We also note that in the record of *United States v. Giarrantano,* SPCM 20588 (1983), General Anderson and Colonel Bozeman both testified that General Anderson very carefully considered evidence in extenuation and mitigation, to include favorable character evidence, before referral and during post-trial review of court-martial cases. We are convinced appellant's case was properly referred to trial, and received a fair and impartial review and action.

▆▆▆▆ Appellant also contends the two specifications alleging possession and distribution of a like amount of marijuana are multiplicious for findings purposes. We disagree. In testing for multiplicity, we need not go beyond the language of the specifications. *United States v. Glover,* 16 M.J. 397 (C.M.A.1983); *United States v. Holt,* 16 M.J. 393 (C.M.A.1983). Since the language of the distribution specifications do not "fairly embrace" the specifications alleging possession, no relief as to findings is required.

The remaining assignment of error raised by appellant is without merit.

The findings of guilty and the sentence are affirmed.

Chief Judge HANSEN,* Senior Judge MOUNTS, Senior Judge McKAY and Judge WERNER concur.

WOLD, Senior Judge, concurring in part and dissenting in part.

I concur with Senior Judge Su-Brown except as to the multiplicity issue. With respect to the multiplicity issue, I concur with Judge Naughton. I would set aside the findings of guilty of Specifications 1 and 5 of the Charge and dismiss those specifications. I would affirm the remaining findings of guilty and the sentence.

NAUGHTON, Judge, with whom Judge COHEN joins, concurring in part and dissenting in part:

I agree with Senior Judge Su-Brown's conclusion that with respect to findings [1] and the adjudged sentence the appellant was not prejudiced by the unlawful command influence of Major General Anderson. As to the issue of multiplicity, I would set aside and dismiss certain specifications as being multiplicious for findings purposes. Finally, I cannot join in Senior Judge Su-Brown's decision to affirm the approved sentence, but would order a new review and action with respect to sentence only.

Under the circumstances of this case, I find Specifications 1 and 5 of the Charge (alleging wrongful possession of marijuana) are multiplicious for findings purposes with Specifications 2 and 4 (alleging wrongful distribution of marijuana). *United States v. Glover,* 16 M.J. 397 (C.M.A.1983); *United States v. Holt,* 16 M.J. 393 (C.M.A. 1983). These specifications establish that the same marijuana was simultaneously possessed and distributed by appellant. Since one cannot distribute marijuana without actually or constructively possessing it, the possession offenses in this case are necessarily included in the distribution offenses unless the record of trial shows that the transactions were actually separate. *See United States v. Bullington,* 18 M.J. 164, 165 (C.M.A.1984); *United States v. Fair,* 17 M.J. 1036 (A.C.M.R.1984). The record in this case contains no such evidence. I am satisfied that appellant suffered no prejudice as to sentence because of this error.

Notwithstanding General Anderson's assurances that he was carefully and impartially exercising his judicial role at the time he reviewed and took action in appellant's case, I find that his earlier declarations created a risk that he was unable to evaluate objectively and impartially appellant's

---

* Chief Judge Donald W. Hansen took final action in this case prior to his reassignment from the Court.

1. *See United States v. Treakle,* 18 M.J. 646 (A.C.M.R.1984) (*en banc*) (Naughton, J., concurring).

adjudged sentence. The General's earlier remarks reasonably give rise to the inference that he was discounting matters favorable to appellant on sentence or that he was applying his consistency concept to approve punitive discharges. This inference has not been dispelled by the evidence.

Accordingly, I would set aside and dismiss Specifications 1 and 5 of the Charge and return the case to The Judge Advocate General of the Army for a new review and action by a different convening authority with respect to sentence only.

YAWN, Judge, concurring in part and dissenting in part:

While I agree with the majority's treatment of the multiplicity issue in this case, I dissent otherwise. See my separate opinion in *United States v. Treakle*, 18 M.J. 646 (A.C.M.R.1984) (en banc). Trial defense counsel's statement on the record as to his familiarity with General Anderson's briefings did not constitute an acknowledgement that he was aware of the extent and far-reaching effects of those briefings. The record shows that the defense counsel had very limited knowledge of General Anderson's activities and decided not to litigate the command influence issue at trial, at least in part, because of the personal assurance from the staff judge advocate that there was no command influence problem in the 3d Armored Division. This representation was, of course, untrue. Additionally, the record reflects that appellant's election to be tried before a military judge sitting alone was partially based upon the defense counsel's view that no one was having much success defending drug cases in this division before courts composed of members. I would set aside both the findings and sentence and authorize a rehearing ordered by a different convening authority.

Judge BADAMI was present for oral argument but took no part in the decision of this case.

Chief Judge SUTER, and Judges MARDEN, COKER, FELDER, WATKINS, BROOKSHIRE and WALCZAK, took no part in the decision of this case.